Filed 10/31/24  P. v. Melendez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062710 |
| v. | (Super. Ct. No. 22NF0357) |
| CARLOS MAURICIO MELENDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Gassia Apkarian, Judge. Affirmed.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Collette

C. Cavalier and James H. Flaherty III, Deputy Attorneys General, for Plaintiff and Respondent.

*      *      *

After a jury convicted Carlos Mauricio Melendez of domestic battery, assault, and child abuse and endangerment, he was sentenced to eight years in prison. He contends his convictions must be reversed because the prosecutor improperly excluded a prospective juror in violation of Code of Civil Procedure section 231.7.[1] As explained below, we conclude the trial court properly overruled the defense objection to the exercise of the peremptory challenge. Melendez also contends the prosecutor committed *Griffin* or *Doyle*[2] error during closing argument. The record shows no such error. Accordingly, we affirm.

## PROCEDURAL HISTORY

On April 25, 2023, a jury found Melendez guilty of domestic battery causing injury with a prior conviction, assault with force likely to cause great bodily injury, and child abuse and endangerment. In a separate proceeding, the trial court found that Melendez previously had been convicted of a strike under the Three Strikes law and a serious felony.

The trial court sentenced Melendez to eight years in state prison. Melendez timely appealed.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise stated.

[2] *Griffin v. California* (1965) 380 U.S. 609 (*Griffin*); *Doyle v. Ohio* (1976) 426 U.S. 610 (*Doyle*).

## DISCUSSION

## I.

## SECTION 231.7

Melendez contends the trial court erred in permitting the prosecutor to exercise a peremptory challenge to Prospective Juror Number 145 (PJ145) over his section 231.7 objection.

A. *Relevant Facts*

During voir dire, when defense counsel was questioning prospective jurors, PJ145 stated he was a retired attorney who practiced probate law. Defense counsel later asked the entire group of prospective jurors whether anyone would believe Melendez committed the current alleged crimes based on his past acts. PJ145 stated he would not because "what happened today and what happened the day after has nothing to do with it."

Later, the prosecutor asked the prospective jurors whether a single witness can prove a case, and PJ145 shook his head in disagreement. The prosecutor noted PJ145's disagreement, and posed a hypothetical about whether a robber should be prosecuted if he robbed PJ145 and there were no other witness to the robbery. PJ145 responded that it would be inappropriate to not prosecute the robber. During an unrecorded portion of the prosecutor's questioning, PJ145 revealed he was a criminal defense attorney.

Subsequently, the prosecutor used his first peremptory challenge to excuse PJ145. The prosecutor stated: "My only reason is he was a defense attorney. Has never prosecuted cases, so that would be my reason for wanting to kick him." After the defense objected under section 231.7, trial court initially stated it was inclined to deny the peremptory challenge because PJ145 did not suggest that he had "any type of leaning" in favor of criminal defendants. The prosecutor responded: "[M]y challenge is simply

3

based on the fact that he is, in fact, an attorney, and . . . it is not a cause challenge," such that the challenge was "race, gender, ethnicity, everything neutral." The court stated it would further consider the peremptory challenge after the lunch recess.

Following the lunch recess, the trial court found the prosecutor was entitled to exercise the peremptory challenge. The court stated: "I do not find that the reasons given to exercise a peremptory challenge have anything to do with the cognizable group membership bearing in mind conscious and unconscious bias."

B. *Applicable Law*

Section 231.7 prohibits the use of "a peremptory challenge to remove a prospective juror on the basis of the prospective juror's race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or the perceived membership of the prospective juror in any of those groups." (§ 231.7, subd. (a).) If a party or the trial court objects to the use of a peremptory challenge, "the party exercising the peremptory challenge shall state the reasons the peremptory challenge has been exercised." (§ 231.7, subd. (c).) The trial court then "evaluate[s] the reasons given to justify the peremptory challenge in light of the totality of the circumstances. The court shall consider only the reasons actually given and shall not speculate on, or assume the existence of, other possible justifications for the use of the peremptory challenge." (§ 231.7, subd. (d)(1).)

Section 231.7 "contains two separate provisions (subds. (e) and (g)) describing presumptively invalid reasons for the exercise of a peremptory challenge. Each subdivision sets out a distinct process by which a court determines whether a presumptively invalid reason can be absolved of that presumption. (*Id.*, subds. (e), (f), (g)(2).)" (*People v. Ortiz* (2023) 96

4

Cal.App.5th 768, 793.) As relevant to this case, presumptively invalid reasons include: "(1) Expressing a distrust of or having a negative experience with law enforcement or the criminal legal system"; "(2) Expressing a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner."; "(3) Having a close relationship with people who have been stopped, arrested, or convicted of a crime"; and "(10) Employment in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)." (§ 231.7, subd. (e)(1), (2), (3) and (10).)

Finally, under section 231.7, subdivision (d), reasons that are not presumptively invalid are evaluated "in light of the totality of the circumstances" to determine if "there is a substantial likelihood that an objectively reasonable person," who is aware that unconscious bias and purposeful discrimination have resulted in the unfair exclusion of potential jurors in California, would view membership or perceived membership in any of the protected groups as a factor in the use of the peremptory challenge. (§ 231.7, subd. (d)(1), (2)(A).)

On appeal, the overruling of an objection under section 231.7 is reviewed de novo "with the trial court's express factual findings reviewed for substantial evidence." (§ 231.7, subd. (j).) The appellate court is to consider only those reasons actually given by the trial court and may "not speculate as to or consider reasons that were not given to explain either the party's use of the peremptory challenge or the party's failure to challenge similarly situated jurors who are not members of the same cognizable group as the challenged juror, regardless of whether the moving party made a comparative analysis argument in the trial court." (*Ibid.*) If the appellate court concludes the trial

5

court erred by overruling an objection, "that error shall be deemed prejudicial, the judgment shall be reversed, and the case remanded for a new trial." (*Ibid.*)

C. *Analysis*

Melendez argues that although the prosecutor's stated reason was facially neutral, it implicated four presumptively invalid reasons, namely, a criminal defense attorney is "[e]mploy[ed] in a field that is disproportionately occupied by members listed in subdivision (a) or that serves a population disproportionately comprised of members of a group or groups listed in subdivision (a)," (§ 231.7, subd. (e)(10)), and "a criminal defense attorney can be expected to have a 'distrust of or . . . a negative experience with law enforcement or the criminal legal system' (subd[.] (e)(1)); to have 'express[ed] a belief that law enforcement officers engage in racial profiling or that criminal laws have been enforced in a discriminatory manner' (sub[.] (e)(2)); and to have a 'close relationship with people who have been stopped, arrested, or convicted of a crime' (subd[.] (e)(3))." We disagree.

As to PJ145's employment as a criminal defense attorney, there is no evidence in the record indicating the composition of his defense clients or the specific area of criminal law, such as white collar crime. The prosecutor thus had no idea about PJ145's clientele, and there is no evidence the prosecutor inferred the clientele was disproportionately Hispanic like Melendez. As to the remaining three reasons, there is no evidence in the record supporting those reasons. The record does not show PJ145 expressed distrust in the criminal legal system or law enforcement; expressed any belief, positive or negative, about the criminal system; or had a close relationship with any person who was stopped, arrested, or convicted of a crime. It is speculative to assume PJ145 had distrust and negative beliefs

6

about the criminal justice system or its constituent members or that he had a close relationship with his clients merely based on his occupation as a criminal defense attorney. In short, there is no evidence in the record that the prosecutor's stated reason for exercising the peremptory challenge was pretextual. Under the totality of the circumstances, there is not a substantial likelihood "that an objectively reasonable person would view race, ethnicity, gender, gender identity, sexual orientation, national origin, or religious affiliation, or perceived membership in any of those groups, as a factor in the use of the peremptory challenge." (§ 231.7, subd. (d)(1).) The trial court properly overruled the defense objection to the peremptory challenge to PJ145.[3]

## II.

### *GRIFFIN/DOYLE* ERROR

During closing arguments, when explaining and addressing the flight instruction, the prosecutor stated that Melendez failed to "stick around and talk to the cops." The trial court overruled defense counsel's objection to this comment under *Griffin*, *supra*, 380 U.S. 609 and *Doyle*, *supra*, 426 U.S. 610.

Melendez acknowledges the prosecutor could comment on his alleged flight from the scene, but contends the prosecutor's reference to

---

[3] Melendez referenced defense counsel's objections to the peremptory challenge under *Batson v. Kentucky* (1986) 476 U.S. 79 and *People v. Wheeler* (1978) 22 Cal.3d 258 and the Racial Justice Act of 2020 (Pen. Code, § 745), but does not articulate a reasoned claim of error under *Batson/Wheeler* or the Racial Justice Act of 2020. Accordingly, any such claim is forfeited. (See *People v. Stanley* (1995) 10 Cal.4th 764, 793 ["'[E]very brief should contain a legal argument with citation of authorities on the points made. If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration'"].)

7

"talk[ing] to the cops" improperly implicated his constitutional rights as set forth in *Griffin* and *Doyle.*

In *Griffin*, the United States Supreme Court held that the privilege against self-incrimination of the Fifth Amendment prohibits any comment on a defendant's failure to testify at trial that invites or allows the jury to infer guilt therefrom, whether in the form of an instruction by the court or a remark by the prosecution. (380 U.S. at pp. 611-615.) We evaluate claims of *Griffin* error by inquiring whether there is "a reasonable likelihood that any of the [prosecutor's] comments could have been understood, within its context, to refer to defendant's failure to testify." (*People v. Clair* (1992) 2 Cal.4th 629, 663.) The prosecutor's comment that Melendez did not stick around to talk to the police merely describes his alleged flight from the crime scene. It did not connect the flight to his testifying at trial. Nor did the comment suggest Melendez should testify at trial to explain his reason for fleeing from the scene. In sum, there is not a reasonable likelihood the comment could have been understood, within its context, to refer to his failure to testify at trial.

*Doyle* holds that, when a testifying defendant provides an exculpatory explanation of his conduct at trial, a prosecutor may not impeach him with post-*Miranda*[4] warning silence. (*Doyle*, at pp. 612-614, 618.) *Doyle* has been limited to post-*Miranda* silence. (See *Fletcher v. Weir* (1982) 455 U.S. 603, 607 ["In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand"]; *Brecht v. Abrahamson* (1993) 507 U.S.

---

[4] *Miranda v. Arizona* (1966) 3834 U.S. 436.

8

619, 628 ["[T]he Constitution does not prohibit the use for impeachment purposes of a defendant's silence prior to arrest, [citation], or after arrest if no *Miranda* warnings are given [citation]"].) The prosecutor's comment did not implicate Melendez's post-*Miranda* warning silence; at best, it implicates his pre-arrest silence. In sum, there was no *Griffin* or *Doyle* error,

DISPOSITION

The judgment is affirmed.

DELANEY, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.

9